**Diedrich Wesselhoeft, Appellee, v. Henry Schanze, Appellant.**

### Gen. No. 15,028.

DECEIT—*when representations not actionable.*  A statement not shown to have been untrue when made will not sustain a recovery in an action of deceit, nor will such a statement support a recovery in such an action unless it appears that the plaintiff relied thereon and was damaged thereby.

Action on the case.  Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding.  Heard in this court at the October term, 1908.  Reversed and remanded.  Opinion filed March 31, 1910.

PARKER & RIGHEIMER, for appellant.

Cyrus Heren, for appellee; A. C. Allen, of counsel.

Mr. Justice Baker delivered the opinion of the court.

Appellee brought an action on the case for deceit against several defendants, but before trial dismissed as to all the defendants except Schanze and Dicus. The trial resulted in a verdict and judgment for the plaintiff against said defendants for $2,500, and Schanze appealed.

The suit grew out of the sale by Dicus to plaintiff of 60,000 shares of the capital stock of the Superior Oil & Gas Company, a corporation incorporated under the laws of the Territory of Arizona. The company was incorporated November 5, 1903, with a capital of $1,250,000 in shares of $1 each, and at the first meeting of the board of directors, November 16, 1903, Schanze was elected president and Dicus secretary. The agreement for the purchase and sale of said 60,000 shares of said stock was made between plaintiff and Dicus July 11, 1904, and the next day Dicus delivered to plaintiff a certificate for 60,000 shares of said stock, and plaintiff paid him therefor $2,500. Said certificate was signed by Schanze as president and Dicus as secretary. It stated that the said corporation was incorporated under the laws of the Territory of Arizona; that its capital stock was $1,250,000; the shares $1 each; certified that plaintiff was the owner of 60,000 shares of the capital stock of said corporation, "full paid and non-assessable," transferable, etc., and was dated July 12, 1904. On the same day, and as a part of said transaction, Dicus made and delivered to plaintiff the following agreement in writing:

"I hereby agree that in consideration of Diederich Wesselhoeft purchasing Twenty-five Hundred Dollars ($2,500) worth of Superior Oil & Gas Company stock, that any time within six months from this date, that if he wishes to return his stock that with the giving

of sixty days notice, the stock may be returned to me and the said $2,500 will be returned with interest at six per cent per annum from this date until the return of said stock.

J. B. DICUS."

Schanze took no part in the negotiations or transaction between plaintiff and Dicus, and plaintiff did not know Schanze until long after such purchase.

The amended declaration contains two counts. The first sets out a large number of representations which the evidence shows were made by Dicus alone.

The second count alleges Henry Schanze was president and J. B. Dicus was secretary of said corporation; that on July 12, 1904, they conspired to wrongfully and fraudulently induce the plaintiff to purchase other corporate stock and deprive him of large sums of money by false, fraudulent and deceitful assertions, and July 12, 1904, exhibited to the plaintiff a certificate of corporate stock of said corporation for 60,000 shares, signed by Schanze as president and Dicus as secretary; that the defendants caused the certificate to be issued to the plaintiff, and by means of said certificate the defendant falsely and fraudulently represented to the plaintiff that the capital stock of the corporation was $1,250,000; that said 60,000 shares were full paid and non-assessable; that said shares were $1 each, by which false representations the defendants fraudulently induced the plaintiff to deliver his check to J. B. Dicus payable to the order of the Superior Oil & Gas Company, for $2,500, which check was paid and charged against the plaintiff; that defendants delivered the said stock and a written instrument dated July 12, 1904, and signed by J. B. Dicus, in which Dicus agreed that if Wesselhoeft purchased said stock, at any time within six months he could return the stock to Dicus and the $2,500 would be returned to plaintiff; that plaintiff believed said representations, whereas in fact the capital stock was not $1,250,000, but on the contrary thereof its shares of stock, or any

of them, had not been paid or subscribed by solvent or responsible persons; that said shares were without value and worthless, the corporation not possessed of any property and insolvent; that the shares of stock were not one dollar each, but represented no money or valuable thing and were worthless; that "the certificate of sixty thousand shares so delivered to plaintiff was not full paid and non-assessable, nor was any part thereof paid, nor was the same of any value" when said representations were made; that Dicus and the corporation are insolvent; that plaintiff has not been repaid, etc., and so by means of, etc., defendants have defrauded plaintiff to his damage, etc.

At the trial plaintiff put in evidence said certificate for 60,000 shares of stock, signed by Schanze as president and Dicus as secretary; the said written agreement signed by Dicus to take back said stock and return to plaintiff his money and the record of the proceedings of the board of directors of said corporation at their first meeting November 13, 1903, from which it appeared that on that day Dicus proposed to sell to said corporation an oil and gas lease of lands in Kansas known as the Hottenstein lease, in consideration of 1,245,000 shares of the capital stock of the corporation; that the proposition was accepted by the board and a certificate for 1,245,000 shares of said stock issued to Dicus, who presented to the corporation a certificate for 245,000 shares, to be used by the corporation as the board of directors might see fit.

Dicus testified that he invested in the property $25,000, for which he received, after deducting the 245,000 shares returned to the company, a million shares of stock.

Defendants offered in evidence, and the court excluded, a certified copy of the Articles of Incorporation of said Superior Oil & Gas Company. Art. III of said Articles is as follows:

"ARTICLE III.

The authorized amount of capital stock of this corporation shall be One Million Two Hundred Fifty Thousand Dollars ($1250000), divided into One Million Two Hundred Fifty Thousand shares of the par value of One Dollar ($1.00) each.  At such time as the Board of Directors may by resolution direct, said capital stock shall be paid into this corporation either in cash, services or by the sale and transfer to it of real or personal property for the uses and purposes of said corporation, in payment for which shares of the capital stock of said corporation may be issued, and the capital stock so issued shall thereupon and thereby become and be fully paid and non-assessable, and in the absence of actual fraud in the transaction, the judgment of the Directors as to the value of the property purchased shall be conclusive."

We think the court erred in excluding the Articles of Incorporation.  There is no averment in the declaration that the directors were guilty of fraud in accepting said lease in payment for the shares of stock issued to Dicus.  The evidence excluded tended to show that the shares issued to plaintiff were non-assessable.

The court gave for the plaintiff the following instruction:

"2.  If the jury believe from the evidence that the defendants Henry Schanze and John B. Dicus were acting in concert in an effort to dispose by fraud and deceit or by means of false representations of the corporate stock of the Superior Oil & Gas Company, which was issued and delivered to the plaintiff, and to secure money therefor, for the use of said Superior Oil & Gas Company, or for John B. Dicus, individually, then any representations respecting such subject matter made by either of the defendants while transacting such business and in executing the common purpose, if you find from the evidence there was such a common illegal purpose, would be the representation of each of said persons."

Dicus sold to plaintiff his own stock, and there is no evidence tending to show that Dicus and Schanze were

acting in concert, or that Schanze had anything to do with said sale except to sign as president the stock certificate which Dicus delivered to plaintiff. Plaintiff testified to a great number of oral statements as made to him by Dicus during the negotiations for the purchase and sale of said stock, but we find no evidence from which the jury might properly find that Dicus and Schanze were acting in concert or in the execution of a common purpose. We think that the court erred in giving said instruction.

Plaintiff's right of action against Schanze, if any he has, is based alone on the certificate which Schanze signed as president and which Dicus delivered to plaintiff. The certificate is in the usual form of stock certificates, and states that the capital stock is $1,250,000 in shares of $1 each, and that plaintiff "is the owner of 60,000 shares, full paid and non-assessable," of the stock of said Oil Company. By thus authenticating and issuing said certificate the defendants made certain representations which accompanied the certificate, and which, like the offer in a letter of credit, addressed themselves to whoever should purchase the certificate thereafter. Windram v. French, 151 Mass. 547.

The scope of these representations is a matter of construction. We think the representation that the shares were non-assessable furnishes no ground of recovery, because it is not shown that the statement was untrue, or that, if untrue, plaintiff was damaged thereby.

If it be held that the representation of the certificate was that the corporation had received for the shares for which said certificate was issued $60,000 in money, or in property substantially equivalent to money, the evidence fails to show that the plaintiff at the time he received said certificate believed that the corporation had been paid therefor $60,000 in money or in property substantially equivalent to money. The evidence shows that plaintiff agreed with Dicus to

buy 60,000 shares and pay therefor $2,500, four cents a share, before he saw the certificate, and that it was a part of the agreement that Dicus should give him back a written agreement to return the money at any time within six months. Dicus testified that he told plaintiff that the oil lease was transferred to the company for stock. Plaintiff denied that he was so told, and further testified as follows:

"Q. Now, you say that Dr. Dicus didn't tell you how that stock was paid for, did he? A. No, never mentioned it.

Q. Did you ask him how it was paid for? A. Not any further as I really imagined as the property had represented that they have all that amount the payment for the capital stock.

Q. In other words, you imagined that, did you?

A. Yes, that it was paid in that way.

Q. You imagined there was $1,000,000 paid for?

A. Well, I took that for granted, as the certificate said it was.

Q. You didn't see the certificate at that time?

A. Well, I asked Dr. Dicus whether it was or not.

Q. What did you ask him? A. I asked him if it was assessable.

Q. What did he say? A. He said it was not, it was fully paid and non-assessable."

Plaintiff only eight months after the organization of the company bought his stock at four cents a share, and there is a strong presumption from that fact alone that he did not then take the statement of the certificate as a representation that the company had received par for the stock, and did not then believe that the company had received par in money or its substantial equivalent for the stock. It is well settled that the representations which will enable a plaintiff to recover on the ground of a deceit, must not only be false and fraudulent, but must be believed in and relied on by the plaintiff and form a material inducement whereby plaintiff was induced to part with his money.

The verdict against Schanze is clearly against the evidence.

For the errors indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*